# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br>v.<br><br>TODD A. DYER, NICHOLAS C. HINDMAN, SR., and MELVIN E. KRUMDICK,<br><br>                  Defendants. | Case No. 15-CR-115-JPS<br><br><br><br>**ORDER** |

      Before the Court are four pretrial motions. First, Defendant Melvin Krumdick ("Krumdick") has requested that the Court provide his travel and lodging expenses for the upcoming trial. (Docket #165). Second, Defendant Todd Dyer ("Dyer") has filed a motion to adjourn the trial date. (Docket #172). Third, Dyer has filed a motion to dismiss certain counts of the superseding indictment based on confrontation issues. (Docket #171). Fourth, Dyer filed a motion to dismiss the superseding indictment in its entirety on the ground that the term of the grand jury who issued it had expired. (Docket #180). The government did not respond to Krumdick's motion but has responded to Dyer's motions to dismiss. *See* (Docket #177 and #181). The Court will address each motion in turn.

**1.     Defendant Krumdick's Motion for Travel and Lodging Expenses**

      First, the Court will deny Krumdick's motion for an order directing the United States Marshal to transport Krumdick and to pay his lodging expenses for the duration of the trial in this case. Krumdick lives in Oak Park, Illinois, a Chicago suburb. He has no income save Social Security and faces other serious financial problems. He also suffers from a variety of health concerns which make it impossible for him to drive himself Milwaukee.

For these reasons, Krumdick argues, he should be provided, free of charge, transport by the Marshal at the beginning and end of trial and food and lodging expenses during the trial. He cites *United States v. Mendoza*, 734 F. Supp. 2d 281 (E.D.N.Y. 2010), for the proposition that the Court can order such relief either at the Marshal's expense under 18 U.S.C. § 4285, at the expense of the Pretrial Services Agency under 18 U.S.C. § 3154(4), or at the Court's expense pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. The Court appreciates the difficulties Krumdick faces as a result of his health and poor financial condition. Yet the Court does not read in these statutes the breadth of authority Krumdick believes they contain.

As the *Mendoza* court noted, a district court can, pursuant to 18 U.S.C. § 4285, order the Marshal to transport an indigent defendant to his trial if the interests of justice so require. *Mendoza*, 734 F. Supp. 2d at 284. That provision says nothing, however, about lodging during a trial. *Id.* Likewise, the court in *Mendoza* declined to rely on the Pretrial Services Agency for lodging, which required a "strained" reading of 18 U.S.C. § 3154(4). *Id.* at 285. The court also wished to avoid placing the defendants in a halfway house, which seemed the most likely housing option the Pretrial Services Agency would elect to provide. *Id.* Thus, the court, in an admittedly "tortured" interpretation of the CJA, found that it could afford the defendants with lodging expenses from the fund used to pay an indigent defendant's representation costs. *Id.* at 286.

The Court agrees with Krumdick and the *Mendoza* court that it can order the Marshal to fund travel arrangements for an indigent defendant to appear at his trial. *See* 18 U.S.C. § 4285. The Court declines to do so here, however. The defendants in *Mendoza* were residents of California and were set to be tried in New York, a distance of thousands of miles that could only

be traversed by plane. By contrast, Krumdick resides at a distance that many who work in Milwaukee would call their daily commute. The strain on Krumdick's resources therefore pales in comparison to the potential costs facing the indigent defendants in *Mendoza*. Furthermore, the cost to the Marshall to fund Krumdick's transportation to and from Oak Park, Illinois for each day of a two-week trial would be significant. The Court does not find that expenditure justified in this instance. *See United States v. Stone*, No. 10–20123, 2012 WL 345267, at *2 (E.D. Mich. Feb. 1, 2012) (declining to provide lodging expenses for a defendant who would have to travel between 75 and 115 miles one-way to court).

Nor will the Court provide, or order any other agency to provide, Krumdick with lodging expenses during trial. This Court, like the Court in *Mendoza*, finds no authority in any statute for it to order the Marshal, the Pretrial Services Agency, or anyone else to fund Krumdick's lodging. Further, the Court declines to follow *Mendoza*'s construction of the Criminal Justice Act, which even that court conceded was inconsistent with the statute's plain text. *See id.* (refusing to follow *Mendoza*'s interpretation of the Criminal Justice Act and pay for the defendants' lodging with those funds). This Court appreciates the concern expressed in *Mendoza* for the needs of indigent criminal defendants. Yet the Court must also weigh carefully the question of how best to expend its limited resources and avoid overburdening the taxpayer. That an indigent defendant faces some difficulty affording housing does not, standing alone, require this Court to provide a two-week hotel stay. *See United States v. Badalamenti*, No. 84 Cr. 236 (PNL), 1986 WL 8309, at *2 (S.D.N.Y. Juy 22, 1986) (observing that problems with travel and lodging expenses are "not acute" when a trial lasts two weeks, as opposed to a year-long trial thousands of miles from the defendant's home).

Instead, the Court commends Krumdick to seek out housing where he can, whether at a homeless shelter, with family or friends, or through the Pretrial Services Agency at a halfway house (assuming space is available for him). He can also, if he chooses, become a guest of the Marshal at a detention facility during his trial. None of these options available is particularly desirable, yet the Court is constrained to act within its authority and in the interest of how best to utilize the resources available to it. As such, Krumdick's motion will be denied in its entirety.

**2.    Defendant Dyer's Motion to Adjourn**

The Court will also deny Dyer's motion to adjourn the trial date. (Docket #172). The motion is rambling and difficult to parse, but the Court gathers that Dyer wishes to have additional time to prepare for the trial in this case. *See id.* at 1. He complains about the vast amount of evidence at issue in this prosecution, *id.* at 2, and that his bi-polar and other mental disorders make it difficult for him to prepare his defense, *id.* at 3. He also argues that the Court's schedule, which required the government to disclose its evidence and witness three weeks before trial, gave him insufficient time to prepare. *Id.* at 15.

Dyer's motion will be denied for several reasons. First, it was filed on November 21, 2016, less than a month before the trial and only two days before the Court's final pretrial conference. The Court is not inclined to entertain an eleventh-hour attempt to delay trial in this matter. Second, even if the Court was so inclined, Dyer has not proffered facts warranting adjournment. Dyer complains that it is difficult for him to review the large volume of evidence underlying this case, but while the evidence here is indeed voluminous, most of it is comprised of communications in which he was a participant. He should, therefore, have some familiarity with such

Page 4 of 9

Case 2:15-cr-00115-JPS    Filed 12/01/16    Page 4 of 9    Document 182

communications. Further, while the Court appreciates that Dyer may suffer from disorders that make it difficult for him to prepare his defense, it notes that Dyer elected to proceed *pro se* and forgo the assistance of counsel. Since he rejected the Court's repeated attempts to secure counsel to aid him, he cannot now be heard to complain that trial preparation is difficult. Indeed, although Dyer laments that he has inadequate time to prepare for trial, he has simultaneously made time to file two motions to dismiss the superseding indictment. As such, it does not appear to the Court that Dyer lacks the time needed to prepare, only that he is wasting his time on other, less useful tasks. Additionally, while Dyer now expresses concern that the pretrial disclosure schedule was too tight for him to effectively prepare, he has known of that schedule since at least July 7, 2016, when the Court entered its amended scheduling order in this case. (Docket #103). His complaint about that schedule comes far too late.

Most importantly, this Court has already entertained numerous motions from Dyer seeking extensions of time and adjournment of the trial date. On July 7, 2016, contrary to the usual practice in this branch of the Court, the Court pushed back the trial date in this case from September 12, 2016, to December 5, 2016. *Id.* In the amended scheduling order, the Court warned that no further extensions would be granted. *Id.* at 2. Thus, when Dyer moved again to adjourn the trial date a few days after this order, the Court denied it. *See* July 13, 2016 Text Only Order. Likewise, when Dyer filed another motion for adjournment in mid-September 2016, Magistrate Judge Jones denied it, observing that "Dyer has been told numerous times that the dates are set and are not flexible" and that Dyer's continuing requests for adjournment "presen[t] no additional or compelling arguments" to those made before. (Docket #142 at 4). Magistrate Jones rightly found that "[t]he

Page 5 of 9

Case 2:15-cr-00115-JPS   Filed 12/01/16   Page 5 of 9   Document 182

complexities of the case have already been considered, and the trial dates have already been revised in light of these complexities in order to accommodate the extra time the parties requested to prepare." *Id.* Accordingly, Magistrate Jones concluded that "[t]he parties have been provided ample time to prepare, and further adjournment is unwarranted and would indeed denigrate the public's interest in seeing this matter resolved." *Id.*

As in the motion before Magistrate Jones, here Dyer has proffered no new or compelling arguments in favor of adjournment, particularly given the late hour of his request. As a result, Dyer's motion to adjourn the trial date will be denied.

**3.     Defendant Dyer's Motion to Dismiss on Confrontation Grounds**

Next, the Court will deny Dyer's motion to dismiss Counts 1, 3, 4, 5, 13, and 23 of the superseding Indictment. in his motion, Dyer contends that these counts must be dismissed because the alleged victims identified by the government as to these counts will not testify at trial, as evidenced by the government's witness list. (Docket #171 at 1.) He argues that "[w]ithout the actual alleged victim being present at trial to cross examine there is NO WAY to prove that a particular investor was exposed to misrepresentation [sic] alleged or made an investment based on the misrepresentation alleged." *Id.* at 5. The government's failure to produce these witnesses is, in his view, a violation of his rights under the Confrontation Clause of the Sixth Amendment. *Id.*

Dyer's motion rests on a misunderstanding of the theory and elements of the government's charges. To convict Dyer of the wire fraud scheme alleged in the superseding indictment, the government need not show that the scheme actually convinced anyone to invest in Dyer's business. As the

Tenth Circuit reasoned in *United States v. Kennedy*, 64 F.3d 1465 (10th Cir. 1995), wire fraud requires "only the devising of a scheme for obtaining money or property by means of false or fraudulent pretenses, representations, or promises—not the making of misrepresentations to any particular individuals. The statute clearly contemplates a separate mail fraud count each time the mail is used to help execute the fraudulent scheme—not each time a misrepresentation is made." *Id.* at 1476 (internal citation omitted). Although producing actual victims of the defendant's scheme is one helpful avenue to prove such charges, it is not required. *Id.*; *United States v. Seidling*, 737 F.3d 1155, 1160 (7th Cir. 2013) ("The Supreme Court has never held that materiality requires the false statement to be made directly to the victims of the scheme. In fact, the Supreme Court held otherwise, finding that a scheme to defraud existed even when the scheme was unsuccessful and 'no one relied on any misrepresentation.'") (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647–48 (2008)). The Seventh Circuit, in accord with *Kennedy*, has held that a defendant could be convicted of mail fraud because he knowingly used the mail system to carry out a fraudulent scheme, despite the fact that none of his mailings ever reached the victims. *Seidling*, 737 F.3d at 1161. In short, the focus is on the scheme, not its success. As a result, Dyer's motion must be denied.

**4.    Defendant Dyer's Motion to Dismiss on Grand Jury Expiration**

Finally, the Court will deny Dyer's motion to dismiss the superseding indictment on the basis that it was returned outside the term of the grand jury who issued the original indictment in this case. (Docket #180). This motion, like his other motion to dismiss, rests on a misapprehension of the relevant procedure. Though his reasoning is not entirely clear, it appears that Dyer assumes, without citation to authority, that only the grand jury who

returned the original indictment could return a superseding indictment. *See id.* at 2–3. This is simply untrue. *United States v. Lacey*, 53 F.3d 332, 1995 WL 258142, at *3–4 (6th Cir. 1995) (observing that "it is standard practice to accept superseding indictments from different grand juries in order to make corrections to or to add defendants, charges, or details to prior indictments"); *United States v. Jones*, No. 5:15-CR-324-F-1, 2016 WL 4987145, at *3 n.4 (E.D.N.C. Sept. 15, 2016) (finding that "courts implicitly deem the use of successor grand juries as a proper and standard practice"); *United States v. Beasley*, No. 12–20030, 2014 WL 1870796, at *2 (E.D. Mich. May 9, 2014) (return of a superseding indictment by a successor grand jury "is of no consequence"). Likewise, it is proper for successor grand juries to consider grand-jury matters presented to their predecessors. *See* Fed. R. Crim. P. 6(e)(3)(C); *United States v. Contenti*, 735 F.2d 628, 631 n.1 (1st Cir. 1984) (explaining that it "is not in the public's interest to expect each new grand jury to start all over rather than accept the work product of the prior grand jury"). As a result, the Court will deny this motion.[1]

---

[1] At the end of this motion, and seemingly in passing, Dyer requests additional grand jury transcripts which he alleges he was not provided. (Docket #180 at 5). Not only does the Court not entertain such throwaway requests, Dyer has raised only speculation in support of his need for such materials. This is insufficient to warrant their disclosure. *See In the Matter of Grand Jury Proceedings, Special September 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991).

**5. Conclusion**

For the reasons explained above, the Court must deny Krumdick's and Dyer's pretrial motions.

Accordingly,

**IT IS ORDERED** that Defendant Melvin Krumdick's motion to seal his motion for travel and lodging expenses (Docket #164) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Melvin Krumdick's motion for travel and lodging expenses (Docket #165) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Todd Dyer's motion to adjourn the trial date (Docket #172) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Todd Dyer's motion to dismiss on confrontation grounds (Docket #171) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Todd Dyer's motion to dismiss based on expiration of the grand jury's term (Docket #180) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2016.

BY THE COURT:

s/ *J. P. Stadtmueller*
J.P. Stadtmueller
U.S. District Judge