Benjamin Proctor
Assistant United States Attorney
517 E. Wisconsin Avenue
Milwaukee, WI 53202

The Honorable Judge Pamela Pepper
517 E. Wisconsin Avenue
Milwaukee, WI 53202

The Honorable Judge J.P. Stadtmueller
517 E. Wisconsin Avenue
Milwaukee, WI 53202

Magistrate Judge David E. Jones
517 E. Wisconsin Avenue
Milwaukee, WI 53202

Magistrate Judge Nancy Joseph
517 E. Wisconsin Avenue
Milwaukee, WI 53202

McHenry County Courthouse
Judge Costello's Chambers
2200 N. Seminary Avenue
Woodstock, IL 60098

Attorney Steven J. Cuda
101 Van Buren Street
Woodstock, IL 60098



15 - CR - 115
16 - CR - 100

Dear Mr. Proctor:

I am in receipt of your letter dated May 21, 2019.

With all due respect intended, I have a legitimate contract with the Bakley family members and have a right to meaningful access to the courts, a right to file and redress grievances, a right to due process and equal protection as set forth in the Fifth and Fourteenth Amendments. Additionally, the Bakleys have admitted to recording me repeatedly, illegally, and surreptitiously. See McHenry County Court Case 18LA000436. I have rights just like anyone else, Mr. Proctor, contrary to what you might think.

Further, your conduct is inconsistent with ABA Rules of Professional Responsibility. Specifically, DR 7-105, which provides: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely

1

to obtain an advantage in a civil matter." Your conduct in prosecuting both the 15-CR-115 Farmland and 16-CR-100 Joan Bakley cases implicates DR-103(A), which provides that "[a] public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause." Indeed, DR-103(B) complements subpart (A), and states: "A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment." My prosecution in the Bakley criminal case in particular, and your attempt to give the Bakleys an advantage in my civil case, offends these rules of discipline.

Your threatened use of a federal criminal indictment as a tool to prevent me from pursuing and obtaining the phone recordings that I should have received as discovery in the criminal case is outrageous. Had you given me those recordings, I would not have plead guilty. Had I had any representation, I would not have plead guilty. Had your indictment alleged my behavior was knowing or that I acted intentionally, I would not have plead guilty. You are aware of the fact that the 16-CR-100 Joan Bakley indictment was defective, missing, like the original 15-CR-115 Farmland indictment, essential elements, those being the required allegation in the introduction of the indictment that I acted knowingly or with an intent to defraud. As documented in my December 29, 2018, letter to Judge Costello, inter alia, the day following my change of plea before Magistrate Jones, I informed Attorneys Donovan and Pruhs of my intent to withdraw my guilty pleas. I began fashioning motions to withdraw the 15-CR-115 Farmland and 16-CR-100 Joan Bakley guilty pleas; however, both courts accepted and adopted those guilty pleas prior to the expiration of 14 days, and, in doing so, I believe, denied me my right to procedural due process.

Add to these issues, Cindy Bakley's recent responses to my nearly one hundred and fifty (150) Request for Admissions, which now create a factual contradiction to your entire case.

Cindy Bakley denies giving sworn testimony that she paid me more than $900,000 to obtain evidence from my dad's house and office in an effort to obtain a purported ten (10) million dollar settlement from my dad, his businesses or Errors and Omissions insurers; she denies appearing before a grand jury; she denies telling FBI

2

Agent Michael Johnson she recorded calls between her and "Robert" (allegedly me); she denies the fact that she was expecting a ten (10) million dollar settlement from my dad's Errors and Omissions insurers facilitated by evidence she agreed to purchase from me or that she knew the evidence she was allegedly obtaining from me was obtained illegally. That's your entire case.

Interestingly, what Cindy does acknowledge in the Request for Admissions is the disclosure in the Consulting Agreement which creates separation from previous agreements. That disclosure states:

> This agreement represents a final executed document replacing all previous agreements. This agreement is done on a best effort basis. There are no warranties or guarantees expressed or implied other than those listed in the agreement.

That conflicts completely with the government's indictment alleging that the Bakleys relied upon alleged oral misrepresentations made by "Robert" (allegedly me) in phone calls she recorded. If it's not in the May 1, 2015, Consulting Agreement, it doesn't exist.

Your letter contains additional untruths and/or misstatements of fact.

Regarding my contact with the Bakleys, that contact, since my incarceration, has been limited to informing them of a breach of the non-disclosure provision of our Consulting Agreement and an offer to arbitrate in lieu of suit. According to Illinois law, and under the terms of the Consulting Agreement, which the Bakleys admitted to signing as recently as last month, I am required to give Notice of an alleged breach and a period in which they could cure the breach. Those notices were ignored.

Also, I have indicated in my letter to Judge Costello, Judge Pepper, your office, and others, dated December 29, 2018, and again in my recently-filed § 2255 Habeas Corpus petition with the 16-CR-100 Joan Bakley District Court; I had no attorney in the 16-CR-100 Joan Bakley criminal case. The December 2018 letter to Judge Costello, inter alia, contained a voluminous number of documents which support my claims. Continuing, no attorney appeared on the 16-CR-100 Joan Bakley criminal case docket sheet; no attorney made a formal appearance; no attorney was paid to represent me; and Attorneys Donovan and Pruhs, who appeared as my standby counsel in the 15-CR-115 Farmland case, sent me their billing statements which reflect no time spent representing me in the 16-CR-100 Joan Bakley case. Attorneys Donovan and Pruhs have since acknowledged that they were never appointed in the 16-CR-100 Joan

Bakley case. How did Attorney Martin Pruhs then sign the Plea Agreement as my standby counsel? If, in fact, he discussed with me the Plea Agreement as alleged, why isn't the time he spent with me documented in his time sheets? Where is the documentation of funds received for representing me? How was this possible without him being appointed as my attorney? The CJA 20 vouchers which I have requested via a recent motion to the 16-CR-100 Joan Bakley court will confirm further my statements. If Donovan and Pruhs weren't my attorneys for the 16-CR-100 Joan Bakley case, who represented me at the consolidated change of plea hearing? A change of plea hearing in which a bipolar defendant who was admittedly off the medication prescribed to ensure fitness, was made to bounce back and forth between plea agreements and failed twice during the hearing to respond to questions. A Rule 11 proceeding in which my history of mental illness and the cessation of medication was not addressed. It's a mess. It's certainly unconstitutional. Attorneys Donovan and Pruhs never viewed nor received any evidence, yet negotiated a Plea Agreement in my absence. Mr. Proctor, you stated falsely in your Appellate Brief that "plea negotiations for the 15-CR-115 Farmland and the 16-CR-100 Joan Bakley cases went on through the night, the evening of December 6, 2016, and into the early morning hours of December 7, 2016", or words to that effect. I have asked Donovan and Pruhs to give me phone records or emails documenting I was a party to these plea negotiations. I was not. Donovan and Pruhs have stated that they have no such records because none exists. What business would Attorneys Donovan and/or Pruhs have negotiating a Plea Agreement having never seen any 16-CR-100 Joan Bakley case evidence and not being appointed as my counsel, standby or otherwise? Also, I had no attorney at either the 15-CR-115 Farmland or 16-CR-100 Joan Bakley sentencing hearings. In the 16-CR-100 Joan Bakley case, no <u>Faretta</u> colloquy was ever conducted to ensure an alleged waiver of counsel was made knowingly, intelligently, and unequivocally. If I'm wrong, would you be so kind as to direct me and the other recipients of this letter to the docket entry in which this <u>Faretta</u> colloquy occurred. Judge Pepper, who I believe is a good judge and was patient and fair with me (under the circumstances), never discussed the waiver of counsel. The establishment of a waiver of counsel falls squarely on the District Court judge. I never met or appeared before Judge Pepper prior to sentencing, and she did not address a waiver of counsel at sentencing. I am entitled, at a minimum, to representation at all critical stages. There is more, of course. The point I am laboring to make is that the affirmative defenses the Bakleys and their attorneys

(through your unethical, impermissible coaching) are depending on may soon evaporate if Judge Pepper sees fit to vacate and remand. Additionally, you and the Bakleys' attorney continue to allege falsely that the Consulting Agreement executed between the Bakleys and me was the artifice or device used to defraud them. That is not what you allege in your indictment. It is not what I plead guilty to without the advice of counsel and without having waived my right to counsel knowingly, intelligently, or unequivocally. The 16-CR-100 Joan Bakley case alleges instead that it was the 75 or more misrepresentation-laden phone calls (the Bakleys admit to recording illegally in their Memorandum of Interviews) between "Robert" (allegedly me) and the Bakleys, which were the artifice or device that caused the Bakleys to pay me more than $900,000 in consulting fees. If you check the record, you will also note that each time the Bakleys paid me, a new Consulting Agreement was executed. As the Agreements came after the payment of fees, the Consulting Agreement would not be the artifice or device which facilitated payments.

In your endless pursuit of me, you have repeatedly put the Bakley family in jeopardy, both legally and financially. You and your investigators, Mr. Proctor. The record reflects the fact that the Bakleys were approached repeatedly by your investigators and rebuffed your inquiries and were ultimately coerced to their peril. The Bakleys never called you and said, "Help us." If, in fact, the Consulting Agreement between the Bakleys and me was a fraud, as is alleged, and is invalid, then, likewise, all the releases and covenants not to sue I obtained for them are likewise invalid. If, as you allege, my involvement with the Bakleys was not to extricate them from the liability of filing a frivolous suit against my dad, but rather, as you allege, the Bakleys paid me $900,000 to steal evidence from my dad's home and office to be used as leverage to get a purported ten (10) million dollar settlement from him, his businesses, and his Errors and Omissions insurers while simultaneously admitting the suit against my father was frivolous, then the Bakleys are unindicted co-conspirators. As Attorney Cuda had Cindy Bakley submit a Sworn Affidavit confirming these allegations in February of this year, as my dad just received the Sworn Affidavit, any statute of limitations issued has been extinguished and my dad is free to pursue the Bakleys for a Conspiracy to Commit Civil Fraud and other expensive causes of action. My dad has voiced his intentions on doing just that -- but then you know that because you have been receiving all of my email, mail, and phone records since my arrival at FCI Elkton two years ago.

5

With regard to my criminal history, let me show the respect of stating on the record (as I have done many times before) that the 1998 conviction (98-CR-176) for which I plead guilty is a valid conviction. I did everything alleged, plead guilty, and drove myself 850 miles to report for a 70-month sentence, although my unmedicated bipolar was a contributing factor. Since then, the government has pursued me endlessly, lied, withheld evidence, and acted in a manner that is contrary to law and is beneath the Office of United States Attorney.

The second Illinois conviction you like to refer to involves Chicago resident Michael Peischl. Mr. Peischl was part of the original 98-CR-176 case. The government obtained his file in its December 1996 search of my Kildeer, Illinois, home. Mr. Peischl was intentionally held out of the original federal prosecution by AUSA Joe Wall and CID Treasury Agent Vita Paukstelis to be used just as I was about to be released from federal prison in May of 2003. Twenty-three (23) days before I was released to a halfway house in Milwaukee, I was informed of the fact that I had been indicted in Lake County, Illinois. Rather than going to halfway house and home to my family, I was "diesel therapied" from Waseca, MN, to MCC Chicago, and ultimately to Lake County Jail in Waukegan, Illinois, where I fought the charges for ten (10) months. The Peischl case was part of the original prosecution. The U.S. Attorney's Office and Agent Pauksteli's behavior was so obvious that Lake County Chief Judge Christopher Stark sentenced me to five (5) years imprisonment in February 2004 to run concurrent with my federal 98-CR-176 conviction from October 1999. THAT IS THE EXTENT OF MY CRIMINAL HISTORY. Everything since then is a fabrication by Mr. Wall, FBI Special Agent Michael Johnson, Special Agent CID Treasury Rhonda Karpinski, and you, Mr. Proctor, created to "shore up" a bogus 15-CR-115 Farmland case and create prejudice.

I could go on and on; but, suffice it to say that you have lied repeatedly, withheld exculpatory evidence, assisted the alleged victims in the 15-CR-115 Farmland case abscond with my business model, intellectual property, and trade secrets in violation of federal law, assisted those same individuals in stealing tens of millions of dollars from me, and have taken me away from my children unjustly.

My polite suggestion is that you figure out a way to fix this. I do not take lightly the situation, nor should you expect that I will <u>ever</u> discontinue my pursuit of justice or the incredible amount of money I am owed.

I hope you appreciate my candor without feeling disrespected or threatened, as that is not my intention.

Regards,

Todd A. Dyer
Reg. No. 05409-089
F.C.I. Elkton
P.O. Box 10
Lisbon, OH 44432